**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01154-RM-NYW

MICHELLE REYNOLDS,

      Plaintiff,

v.

BRIAN FLYNN, Chief Judge of the Twenty-First Judicial District, in his individual capacity;
JOE PELLE, in his official capacity as Boulder County Sheriff; and
MATT LEWIS, in his official capacity as Mesa County Sheriff,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

      This matter is before this court on three pending motions:

    (1)    Defendant Matt Lewis' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (the "Lewis Motion to Dismiss") [Doc. 61, filed August 27, 2021];

    (2)    Defendant Joe Pelle's Motion to Dismiss (the "Pelle Motion to Dismiss") [Doc. 62, filed August 27, 2021]; and

    (3)    Defendant Flynn's Motion to Dismiss First Amended Complaint (the "Flynn Motion to Dismiss") [Doc. 63, filed August 27, 2021] (collectively, the "Motions" or "Motions to Dismiss").

This court considers the Motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated July 2, 2021 [Doc. 25], and the Memorandum dated September 10, 2021 [Doc. 64]. The court concludes that oral argument will not materially assist in the resolution of these matters. Accordingly, upon review of the Motions, their respective briefing, and the applicable case law, I

respectfully **RECOMMEND** that (1) the Lewis Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**; (2) the Pelle Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**; and (3) the Flynn Motion to Dismiss be **GRANTED**.

## BACKGROUND

This court draws the following facts from Plaintiff Michelle Reynolds' First Amended Complaint and Jury Demand (the "Amended Complaint") [Doc. 95][1] and presumes they are true for purposes of the Motions to Dismiss.  Relevant here, Defendant Brian Flynn ("Defendant Flynn" or "Judge Flynn"), the Chief Judge of Colorado's Twenty-First Judicial District in Mesa County, Colorado, issued Administrative Order 2018-07 (the "Administrative Order") to "establish[] a uniform procedure for the 21st Judicial District on how to process out-of-county [arrest] warrants." [Doc. 95 at ¶¶ 10, 29-30].  The Administrative Order instructed Mesa County judges to not modify a defendant's bond when a defendant appears in Mesa County Court on an out-of-county arrest warrant.  [*Id.* at ¶¶ 29, 32].  The Administrative Order did not instruct Mesa County judges that they must provide detainees with notice of the Administrative Order either prior to the detainee's first appearance or at the detainee's first appearance.  [*Id.* at ¶ 32].  Further, the Administrative Order suggested, citing *People v. Garcia*, 746 P.2d 560 (Colo. 1987), that a court has no authority to set a bond in cases in which a detainee is held on an out-of-county warrant.  [*Id.* at ¶ 33].  According to Plaintiff, the Administrative Order was issued in response to the Mesa County Sheriff's Office's decisions to (1) take defendants held in custody on out-of-county arrest warrants to the nearest county court and (2) assume joint responsibility with the jurisdiction which issued

---

[1] On August 13, 2021, Plaintiff's Amended Complaint was accepted for filing, [Doc. 59], but a clean copy of the proposed Amended Complaint [Doc. 44-2] was not filed on the docket as a separate docket entry.  To ensure completeness and promote clarity of this case's docket, on January 5, 2022, this court directed the Clerk of Court to docket the Amended Complaint as a separate docket entry.  *See* [Doc. 94; Doc. 95].

the warrant for transportation of the defendant, but permit such transport to be conducted as far out as 14 days after the defendant's arrest.  [*Id.* at ¶ 31].

On August 23, 2019, Plaintiff Michelle Reynolds ("Plaintiff" or "Ms. Reynolds") was pulled over by the Colorado State Patrol.  [*Id.* at ¶ 14].  Unbeknownst to Ms. Reynolds, at the time she was pulled over, there was an outstanding warrant for her arrest "regarding an incident from October 2018," which had been issued by a Boulder County court.  [*Id.* at ¶¶ 15-16].  The warrant stated: "no bond pending first appearance in court."  [*Id.* at ¶ 17].  Ms. Reynolds was arrested on the warrant and booked into the Mesa County Detention Facility ("MCDF").  [*Id.* at ¶ 18].

The Colorado State Patrol informed the Boulder County Sheriff's Office that Ms. Reynolds had been arrested on a Boulder County warrant and instructed the Boulder County Sheriff's Office that "it needed to extradite Ms. Reynolds."  [*Id.* at ¶ 19].  In addition, the Mesa County Sheriff's Office asked the Boulder County Sheriff's Office "to make transport arrangements with the Mesa County Sheriff's Office."  [*Id.* at ¶ 20].  Both the Boulder County Sheriff's Office and the Mesa County Sheriff's Office "received messages indicating that" the affidavit accompanying Ms. Reynolds's arrest warrant stated that there would be "no bond until seen by judicial officer."  [*Id.* at ¶ 21].

On August 27, 2019, Ms. Reynolds appeared by video at an advisement hearing in Mesa County Court.  [*Id.* at ¶ 36].  Ms. Reynolds did not receive clear and advanced notice of the hearing; was not informed of the purpose of the hearing or that she was being held on a "no-bond" warrant; and was not informed that it was the Mesa County Court's policy "to not modify or set bail for out-of-county warrants."  [*Id.* at ¶ 37].  At the hearing, the Mesa County Court judge did not inform Ms. Reynolds of the nature of the charges against her; her right to bail; or the existence of the Administrative Order.  [*Id.* at ¶ 39].  Additionally, Ms. Reynolds was appointed counsel only "a

few moments" before the hearing, which deprived Ms. Reynolds of the opportunity to consult with counsel or present any evidence or argument in support of setting bail. [*Id.* at ¶ 40].

The judge at Ms. Reynolds's advisement hearing did not set a bond at the hearing, instead advising Ms. Reynolds that she was being held pursuant to a "no bond" warrant and that Boulder County was responsible for her transportation to Boulder County. [*Id.* at ¶ 42]. Moreover, the judge did not conduct an individualized assessment as to Ms. Reynolds or make any factual findings as to whether Ms. Reynolds's continued detention was necessary. [*Id.* at ¶ 41]. In all, the hearing lasted fewer than two minutes. [*Id.* at ¶ 38]. According to Plaintiff, because Ms. Reynolds "did not receive a prompt bond setting," she was "required to remain incarcerated for an indefinite period of time until she could appear before the Boulder County Court." [*Id.* at ¶ 45].

While at MCDF, Ms. Reynolds made daily requests and submitted numerous kites asking to be transported to Boulder County. [*Id.* at ¶ 47]. In addition, Ms. Reynolds's defense attorney made numerous phone calls to the transport departments of the Mesa County Sheriff's Office and the Boulder County Sheriff's Office requesting that Ms. Reynolds immediately be transported to Boulder County. [*Id.* at ¶¶ 4, 48]. Despite Ms. Reynolds's and her attorney's requests, and although both the Boulder County Sheriff's Office and the Mesa County Sheriff's Office knew that Ms. Reynolds was being held in the MCDF on an out-of-county warrant with no bond and would need to be transported to Boulder County, Ms. Reynolds was not transported. [*Id.* at ¶ 46].

On August 28, 2019, the Mesa County Sheriff's Office again notified the Boulder County Sheriff's Office that Ms. Reynolds needed to be transported to Boulder County. [*Id.* at ¶ 50]. This same day, Ms. Reynolds's defense counsel spoke with the Boulder County Sheriff's Office Transport Coordinator, Amanda Pelletier ("Ms. Pelletier") about the need for Ms. Reynolds's immediate transport. [*Id.* at ¶¶ 48, 51]. Ms. Pelletier then contacted the Mesa County Sheriff's

Office Transport Coordinator, Carla Dittman ("Ms. Dittman"), about Ms. Reynolds's transport; Ms. Dittman responded that she would coordinate transportation for the following week. [*Id.* at ¶¶ 53-54]. According to Plaintiff, "Ms. Pelletier tacitly agreed to not arrange transportation and, instead, wait for Ms. Dittman to plan transportation at some point the following week," did not push back on the proposed timing, and did not coordinate transportation for an earlier time. [*Id.* at ¶ 55]. On August 30, 2019, Ms. Dittman informed Ms. Pelletier that Ms. Reynolds would be transferred to Boulder Count on September 5, 2019, but no one informed Ms. Reynolds or her attorney of this plan. [*Id.* at ¶¶ 57-58].

Around this time, Ms. Reynolds's counsel contacted the Mesa County Sheriff's Office and the Boulder County Sheriff's Office and asked about Ms. Reynolds's transport, but counsel was not given any information due to a "security concern." [*Id.* at ¶ 60]. On September 3, 2019, an unnamed person in the Mesa County Sheriff's Office responded to a kite submitted by Ms. Reynolds, stating that Boulder County was aware that Ms. Reynolds needed to be transported, but the person did not know when Ms. Reynolds would be transported. [*Id.* at ¶ 61]. Ms. Reynolds was transported to "the Boulder jail" on September 5, 2019 and appeared before "a Boulder judge" on September 6, 2019. [*Id.* at ¶¶ 66-67]. Ms. Reynolds was released on a personal recognizance bond and her criminal case was dismissed on September 19, 2019. [*Id.* at ¶¶ 69-70]. Ms. Reynolds alleges that while she was confined at MCDF, she was physically assaulted "multiple times." [*Id.* at ¶ 73]. In addition, Ms. Reynolds lost her job while she was confined. [*Id.* at ¶ 72]. Ms. Reynolds suffered "fear and hopelessness at her seemingly endless incarceration" and "continues to suffer distress from her experience." [*Id.* at ¶ 74].

Plaintiff initiated this civil action on April 27, 2021 against Judge Flynn, Defendant Joe Pelle, the Boulder County Sheriff ("Defendant Pelle" or "Sheriff Pelle"), and Defendant Matt

Lewis, the Mesa County Sheriff ("Defendant Lewis" or "Sheriff Lewis"). *See generally* [Doc. 1]. Plaintiff filed a motion to amend her complaint on August 3, 2021, [Doc. 44], which this court construed as an amendment as a matter of right under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure as to Sheriff Lewis and Judge Flynn and as an unopposed motion to amend under Rule 15(a)(2) as to Sheriff Pelle.  [Doc. 59].[2]  In her Amended Complaint, Plaintiff raises the following claims: (1) a 42 U.S.C. § 1983 Fourteenth Amendment procedural due process claim against all Defendants ("Claim One"); and (2) a 42 U.S.C. § 1983 Fourteenth Amendment substantive due process claim against all Defendants ("Claim Two").  *See* [Doc. 95 at 27, 31].

On August 27, 2021, each of the Defendants filed a Motion to Dismiss, [Doc. 61; Doc. 62; Doc. 63], which were referred to the undersigned Magistrate Judge for recommendation.  [Doc. 64].  Plaintiff responded to the Motions to Dismiss, *see* [Doc. 71; Doc. 72; Doc. 73], and Defendants have each filed a Reply.  [Doc. 86; Doc. 87; Doc. 88].  Because the Motions are ripe for recommendation, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring); *see also Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (explaining courts have an independent obligation to ensure subject matter jurisdiction

---

[2] Each Defendant had filed a motion to dismiss directed to the original complaint.  *See* [Doc. 23; Doc. 29; Doc. 35].  After Ms. Reynolds's Amended Complaint was accepted for filing, this court struck the then-pending motions to dismiss as moot on the basis that they were directed at an inoperative, superseded pleading.  [Doc. 59].

exists).  Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction.  *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The Defendants raise various arguments advocating for dismissal of Plaintiff's claims. Because Sheriffs Lewis and Pelle raise substantially similar arguments, the court first addresses the Lewis Motion to Dismiss and the Pelle Motion to Dismiss together. Then, the court turns to the arguments raised in Judge Flynn's Motion to Dismiss.

## I.      Lewis and Pelle Motions to Dismiss

In his Motion to Dismiss, Sheriff Lewis argues that the claims against him should be dismissed because (1) they are barred by the Eleventh Amendment, [Doc. 61 at 17]; (2) the Mesa County Sheriff's Office is not a "person" for purposes of § 1983, [*id.*]; (3) Plaintiff fails to state a procedural due process claim under Rule 12(b)(6), [*id.* at 4, 6]; and (4) Plaintiff fails to state a substantive due process claim under Rule 12(b)(6). [*Id.* at 11].[3] Sheriff Pelle advocates for dismissal on the bases that (1) Plaintiff fails to state a cognizable procedural due process claim, [Doc. 62 at 3]; and (2) Plaintiff fails to state a substantive due process claim. [*Id.* at 8]. The court addresses these arguments in turn.

### A.      Eleventh Amendment Immunity

First, Sheriff Lewis argues that Plaintiff's claims against him are barred by the Eleventh Amendment. *See* [Doc. 61 at 17]. Because the proper application of Eleventh Amendment immunity deprives a federal court of jurisdiction, *see, e.g., Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."), the court considers this

---

[3] Sheriff Lewis also argues that, to the extent Plaintiff seeks injunctive relief, such request is moot. [Doc. 61 at 18]. Plaintiff does not respond to this argument. *See generally* [Doc. 73]. However, the Amended Complaint seeks only monetary damages and does not seek injunctive relief. *See* [Doc. 95 at 32-33]. For this reason, the court does not address Sheriff Lewis's argument.

argument first.  According to Sheriff Lewis, in the context of this case, he was "performing a purely state function, namely, incarceration of Reynolds as an arrestee and detainee on an out of county warrant on state criminal charges." [Doc. 61 at 17].  Thus, Sheriff Lewis argues that he was functioning as a state actor and is entitled to Eleventh Amendment immunity from Plaintiff's claims. [*Id.*].  Plaintiff disagrees.  She asserts that Sheriff Lewis was not acting as an arm of the state because the functions of overseeing the Mesa County jail and overseeing the transportation of out-of-county detainees do not "have any connection to the State." [Doc. 73 at 24].

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities." *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  This immunity extends to suits by citizens against their own state or its agencies in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  The Eleventh Amendment thus bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983.  *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (stating that § 1983 "does not abrogate a state's sovereign immunity").

Here, Ms. Reynolds sues Sheriff Lewis in his official capacity.  *See* [Doc. 95 at 1].  "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  Thus, a suit against Sheriff Lewis in his official capacity is the equivalent of a suit against Mesa

County. *See Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (finding that a suit against a sheriff was in fact a suit against the county for which the sheriff worked).

Thus, the question before the court is whether Mesa County—through Sheriff Lewis—is an "arm of the state" of Colorado. *See* [Doc. 61 at 18]. "The Supreme Court 'has repeatedly refused to extend Eleventh Amendment sovereign immunity to counties.'" *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (quoting *Northern Ins. Co. of N.Y. v. Chatham Cty.*, 547 U.S. 189, 193 (2006)). "It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity." *Id.* The Tenth Circuit looks to "four primary factors" to determine whether an entity constitutes an "arm of the state." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). The court considers (1) the "character ascribed to the entity under state law;" (2) the "autonomy accorded the entity under state law," or the degree of control the state exercises over the entity; (3) the entity's finances, i.e., "the amount of state funding the entity receives and . . . whether the entity has the ability to issue bonds or levy taxes on its own behalf;" and (4) "whether the entity in question is concerned primarily with local or state affairs," examining the agency's function, composition, and purpose. *Id.*

Sheriff Lewis does not address the *Steadfast* factors in his Motion to Dismiss, *see* [Doc. 61 at 17-18], nor does Ms. Reynolds. *See* [Doc. 73 at 23-24]. Thus, the court presently has no information before it as to, for example, the autonomy, finances, functions, or composition of Mesa County, so as to analyze whether Mesa County constitutes an "arm of the state" for purposes of this case.[4]

---

[4] While the court is under no obligation to conduct legal research for a party, the court notes that the Colorado Constitution classifies sheriffs as "[c]ounty officers." *See* Colo. Const. art. XIV, § 8; *see also* Colo. Const. art. IV, § 1(1) (recognizing that the executive department constitutes the governor, lieutenant governor, secretary of state, state treasurer, and attorney general); *see also Couser*, 959 F.3d at 1026 (in finding that county sheriffs were county, rather than state, actors,

While a court may, but is not obligated to, raise issues of Eleventh-Amendment immunity *sua sponte*, this court will address this issue briefly. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008). While the Tenth Circuit has not expressly ruled on this issue, the weight of authority finds that "[t]he burden of proving an Eleventh Amendment immunity defense rests with the defendant asserting it." *Credit Union Grp. Enter. LLC v. Kansas Dep't of Credit Unions*, 457 F. Supp. 2d 1235, 1241 (D. Kan. 2006). *See, e.g.*, *Pastrana-Torres v. Corporacion De Puerto Rico Para La Difusion PUBLICA*, 460 F.3d 124, 126 (1st Cir. 2006); *ITSI T.V. Prods., Inc. v. Agric. Ass'n*, 3 F.3d 1289, 1291 (9th Cir. 1993); *Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). Indeed, "[a]n entity invoking Eleventh Amendment immunity generally bears the burden of asserting and ultimately proving those matters necessary to establish its defense," and once that party meets that burden, the burden "shifts to plaintiff to demonstrate than an exception to Eleventh Amendment immunity applies." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1161 (E.D. Cal. 2017). Thus, the court finds that Sheriff Lewis bears the burden of establishing that Mesa County is an arm of the state. *Patterson v. Rural Water Dist. 2*, 438 F. Supp. 3d 1258, 1268 (W.D. Okla. 2020).

By failing to discuss any of the relevant factors necessary to this court's determination as to whether Mesa County is an arm of the state, Sheriff Lewis has not met his burden of establishing that Mesa County is an arm of the state, particularly where "county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity." *Couser*, 959 F.3d at 1023; *Est. of Goodwin by & through Alvarado v. Connell*, 376 F. Supp. 3d 1133, 1148 (D.

---

noting that the Kansas Constitution did not recognize sheriffs as state officers and a Kansas statute recognized sheriffs as county officers).

Colo. 2019) ("It is well established that counties are not entitled to Eleventh Amendment immunity.")).

Accordingly, Sheriff Lewis has not shown that he is immune from suit under the Eleventh Amendment, and this court declines to recommend dismissal on the basis of the Eleventh Amendment.

### B.   Proper Defendants

Next, Sheriff Lewis argues that "the [Mesa County Sheriff's Office] is a subsidiary department of Mesa County, Colorado and, therefore, is not a stand-alone 'person' subject to suit under Section 1983." [Doc. 61 at 18 (footnote omitted)]. Ms. Reynolds counters that Sheriff Lewis "is suable as a person under § 1983," relying on *Chavez v. Board Of County Commissioners*, 426 F. Supp. 3d 802 (D. Colo. 2019), and further asserts that "resolution of this issue is purely academic because the County is required by Colorado statute to pay any judgment against the Sheriff's Office." [Doc. 73 at 25]. In his Reply, Sheriff Lewis challenges Ms. Reynolds's reliance on *Chavez* and maintains that "[a]mple case law supports [his] contention that the Mesa County Sheriff's Office is not a suable person under section 1983." [Doc. 86 at 13-14].

Section 1983 of Title 42 of the United States Code provides:

> Every <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). "Accordingly, a plaintiff may only sue a 'person' within the meaning of § 1983." *Johnson v. Correct Care Sols., LLC*, No. 17-cv-00782-RM-STV, 2018 WL 7372075, at *4 (D. Colo. Nov. 21, 2018), *report and recommendation adopted*, 2019 WL 764602 (D. Colo. Feb. 21, 2019).

Many courts within this District have found that a sheriff's office is not a "person" and is thus not a suable entity under § 1983 because a sheriff's office is not a separate legal entity from the county within which it operates.   *See, e.g.*, *id.* at *4; *Sarnella v. Kuhns*, No. 18-cv-00779-PAB-NYW, 2019 WL 1112388, at *2 (D. Colo. Mar. 8, 2019); *Clark v. Shrader*, No. 20-cv-01410-DDD-KLM, 2021 WL 229283, at *5 (D. Colo. Jan. 22, 2021), *report and recommendation adopted*, No. 20-cv-01410-RMR-KLM, ECF No. 101; *Slater v. Teague*, No. 17-cv-02084-PAB-STV, 2018 WL 1800919, at *4 (D. Colo. Mar. 21, 2018), *report and recommendation adopted*, 2018 WL 1794883 (D. Colo. Apr. 12, 2018).  The Tenth Circuit has stated the same.  *See Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015) (unpublished) ("[Plaintiff's claim against the Denver Sheriff's Department fails because it is not a suable entity under § 1983.").

However, Ms. Reynolds does not name the Mesa County Sheriff's Department as a defendant in this matter.  Rather, she names Sheriff Lewis in his official capacity.  *See* [Doc. 95 at 1].  The Tenth Circuit has consistently found that an official capacity claim against a sheriff is the equivalent of a suit against *the county* which the sheriff represents—not the office in which the sheriff works.  *See Cox*, 800 F.3d at 1254; *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent."); *Kilman v. Brown*, 833 F. App'x 474, 475 (10th Cir. 2021) (unpublished) ("Because he named Sheriff Brown in his official capacity, his suit functioned as a suit against Arapahoe County itself."); *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998).  Thus, under this rationale, Ms. Reynolds's claims against Sheriff Lewis in his official capacity are, in actuality, claims against Mesa County—*not* the Mesa County Sheriff's Office.

And cases finding that a sheriff's office—or another similar municipal department—is not a suable "person" under § 1983 have often been based on the rationale that such a department is not legally separate from the municipality which it represents, and thus, the office cannot be separately sued where the municipality has too been named as a defendant. *See, e.g.*, *Stump v. Gates*, 777 F. Supp. 808, 815 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) ("The police department simply does not exist as a separate legal entity independent of the City of Greenwood Village under whose charter it was created."); *Johnson*, 2018 WL 7372075, at *4 ("The Arapahoe County Sherriff's Office is not a suable person under § 1983 because it does not exist as a separate legal entity, independent of Arapahoe County itself." (quotation omitted); *Slater*, 2018 WL 1800919, at *4; *cf. Rustgi v. Reams*, 536 F. Supp. 3d 802, 822 (D. Colo. 2021) (finding that, where the plaintiff sued both the county and the county sheriff in his official capacity, the official-capacity claim was duplicative and subject to dismissal). Because Ms. Reynolds does not name the Mesa County Sheriff's Office in her Amended Complaint, and instead asserts claims against Mesa County itself, the court finds the above-referenced cases, and those relied upon by Sheriff Lewis, *see* [Doc. 86 at 14], inapplicable.

For these reasons, the court is respectfully not persuaded by Sheriff Lewis's argument that he is not a proper defendant in this matter.[5] "A § 1983 claim is properly plead against a municipality <u>either</u> by naming the municipality itself or by naming a municipal official in his <u>or</u> her official capacity. <u>Naming either is sufficient</u>." *Davis v. Clifford*, No. 13-cv-01642-WJM-KLM, 2014 WL 901608, at *3 (D. Colo. Mar. 7, 2014) (emphasis added) (internal quotation marks

---

[5] The case Plaintiff relies upon in her Response—*Chavez*—thoroughly discusses the relevant case law as to whether a sheriff's office may be sued before ultimately "disagree[ing] that sheriff's offices in Colorado have no capacity to be sued." *See* 426 F. Supp. 3d at 809. But based on the court's above conclusion that Plaintiff's claims are, in effect, against Mesa County, and not the Mesa County Sheriff's Office, the court need not delve into this issue any further.

and citations omitted).  In so finding, the court expressly does not pass on the sufficiency of Plaintiff's allegations, the merits of Plaintiff's claims, or whether any actions or inactions alleged in this case can be attributed to Mesa County.  Rather, the court's conclusion is based solely on the face of Plaintiff's Amended Complaint, the decision to name Sheriff Lewis in his official capacity as a defendant, and well-established case law dictating that the claims against Sheriff Lewis are, in effect, against Mesa County.[6]  Thus, this court declines to recommend dismissal of the claims against Sheriff Lewis on this basis.

### C.    Sufficiency of the Allegations Under Rule 12(b)(6)

Next, both Sheriff Lewis and Sheriff Pelle argue that Plaintiff has failed to state either a procedural due process claim or a substantive due process claim.  As an initial matter, the court notes that several of the arguments raised by these Defendants go not toward the sufficiency of Plaintiff's allegations, but rather go toward the merit of Plaintiff's claims.

### 1.    Procedural Due Process

The Fourteenth Amendment Due Process Clause states that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Thus, "[a] facially valid procedural-due-process claim is comprised of two elements: '(1) a constitutionally protected liberty or

---

[6] Although Sheriff Lewis does not argue that Mesa County cannot be sued, *see* [Doc. 61], the court notes that, under Colorado law, "[e]ach organized county within the state is a body corporate and politic and as such is empowered . . . [t]o sue and be sued."  Colo. Rev. Stat. § 30-11-101(1)(a); *see also White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) ("The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued.").

property interest, and (2) a governmental failure to provide an appropriate level of process.'" *Sutton v. Mikesell*, 810 F. App'x 604, 610-11 (10th Cir. 2020) (unpublished) (quoting *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014); *see also Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016) (stating that, typically, a procedural due process claim depends on two questions: "(1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply?  And if so, (2) was the plaintiff afforded an appropriate level of process?").

The Sheriff Defendants raise a number of various arguments with respect to Plaintiff's procedural due process claim.  The court addresses them below.

***The Basis of Plaintiff's Procedural Due Process Claim***.  Sheriff Lewis first argues that Ms. Reynolds's procedural due process claim should be dismissed because it is "based on an alleged violation of rights created by the Colorado Constitution and/or Colorado statutory law." [Doc. 61 at 4].[7]  According to Sheriff Lewis, Plaintiff is attempting to use § 1983 as a vehicle to assert a violation of state law, and because "Section 1983 does not provide a basis for redressing a violation of state law," Plaintiff's procedural due process claim must be dismissed.  [*Id.* at 4-6].  Ms. Reynolds counters that her claim asserts a violation of the United States Constitution—not the Colorado Constitution or any state law—and that Colorado law is simply relevant to Ms. Reynolds's theory that she has a state-created liberty interest.  [Doc. 73 at 6].

---

[7] Although Sheriff Lewis argues that Plaintiff's "<u>claims</u> must be dismissed," *see* [Doc. 61 at 4 (emphasis added)], it appears from his Motion to Dismiss that this argument is narrowed to Plaintiff's procedural due process claim.  *See* [*id.* (stating that the procedural due process claim fails as a matter of law); *id.* at 5 (quoting Ms. Reynolds's procedural due process allegations)].  Thus, the court construes this argument as asserted only as to Plaintiff's procedural due process claim.

"A protected interest in liberty or property may have its source in either federal or state law." *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012); *see also O'Connor v. Trani*, No. 14-cv-01026-MJW, 2014 WL 5423759, at *3 (D. Colo. Oct. 24, 2014) (where the asserted liberty interest was not created by the United States Constitution, finding that "if [the plaintiff] has been deprived of a constitutionally protected liberty interest as he contends, that liberty interest must arise under Colorado state law."). Indeed, the procedural component of the Due Process Clause protects a person's liberty interest if that liberty interest is an entitlement—i.e., "the asserted right to property or liberty is mandated by state law when specified substantive predicates exist." *Elliott*, 675 F.3d at 1244. For example, the Tenth Circuit has stated that "if state law provides that a prison inmate is entitled to be released on parole when the inmate has not violated prison regulations for 10 years, then that interest in being released is a protected liberty interest: release is mandated when the substantive predicate (no violations for 10 years) is satisfied." *Id.*

The court agrees with Ms. Reynolds. The court does not read Ms. Reynolds's procedural due process claim as asserting a violation of any state law. Instead, Ms. Reynolds identifies a liberty interest "*flowing from* the Colorado Constitution, Colorado statutes, . . . and the U.S. Constitution." [Doc. 95 at ¶ 148 (emphasis added)]. And the Amended Complaint makes clear that her claim asserts a violation of federal law: "The acts or omissions of these Defendants as described herein deprived Ms. Reynolds of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America." [*Id.* at ¶ 159]; *see also* [*id.* at ¶ 155 (Plaintiff asserting that her constitutional rights "protected by the procedural arm of the Due Process Clause" were violated)]. Construing these assertions in Ms. Reynolds's favor, as it must, the court finds that Ms. Reynolds's procedural due process claim asserts a violation of her federal constitutional rights. The court is thus not persuaded by this argument.

17

***Protected Liberty Interest***.   Next, Sheriffs Lewis and Pelle argue that Ms. Reynolds's procedural due process claim should be dismissed for failure to allege the existence of a protected liberty interest.  [Doc. 61 at 6; Doc. 62 at 4].  Each of these Defendants acknowledges a right or interest in receiving bail generally.  *See* [Doc. 61 at 6 (Sheriff Lewis acknowledging "language in the Colorado Constitution and Colorado statutes which generally provides that arrestees have a right to bail")]; *see also* [Doc. 62 at 4 (Sheriff Pelle stating that the Colorado Constitution and Colorado statutes "establish a generalized liberty interest in bail")].  However, Sheriffs Lewis and Pelle argue that Ms. Reynolds does not have a protected liberty interest in obtaining bail *within a specified time frame* after her arrest.  [Doc. 61 at 6-7; Doc. 62 at 4].  In response, Ms. Reynolds asserts that her claim is based on a liberty interest "in pretrial freedom and bail" and that this interest stems "from both federal and state law."  [Doc. 73 at 7; Doc. 72 at 7].  First, she cites Tenth Circuit case law to support the notion that pretrial freedom and bail constitute liberty interests protected by the Fourteenth Amendment.  [Doc. 73 at 7; Doc. 72 at 7].  Then, she argues that she has a "state-created liberty interest in pre-trial freedom and bail that is firmly established in the state constitution and statutes."  [Doc. 73 at 7; Doc. 72 at 7].

As a preliminary matter, the court notes that neither Sheriff Pelle nor Sheriff Lewis cites to any legal authority supporting their narrow characterization of the liberty interest at stake in this case.  *See generally* [Doc. 61; Doc. 62].  General citations to legal authority stating that the right to bail is not absolute, *see* [Doc. 61 at 7; Doc. 61 at 4], do not suffice.  "Federal courts have long recognized an individual has a liberty interest in being free from incarceration absent a criminal conviction."  *Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla. ex rel. Okla. Cty. Sheriff's Off.*, No. CIV-17-729-D, 2018 WL 912285, at *4 (W.D. Okla. Feb. 15, 2018).  Indeed, the Tenth Circuit has instructed that "the right of an accused to freedom pending trial is <u>inherent</u> in the concept of a

liberty interest protected by the due process clause of the Fourteenth Amendment." *Meechaicum v. Fountain*, 696 F.2d 790, 791-92 (10th Cir. 1983) (emphasis added).

While Sheriff Lewis quotes *Dodds v. Richardson* as stating that "[a]n arrestee obtains a liberty interest in being freed of detention *once* [*her*] *bail is set* because the setting of bail accepts the security of the bond for the arrestee's appearance at trial and 'hence the state's justification for detaining [her] fade[s]," [Doc. 61 at 7]; *see also Dodds*, 614 F.3d 1185, 1192 (10th Cir. 2010) (emphasis added), the court notes that Sheriff Lewis cites *Dodds* for an unrelated proposition, *see* [Doc. 61 at 7], and notably makes no express argument that, because bail was never set, Ms. Reynolds has no liberty interest in pretrial freedom. *See generally* [*id.* at 6-7]. Although Ms. Reynolds was held on a no-bond warrant and was never given the opportunity to post bond, *see* [Doc. 95 at ¶ 42], the court concludes that these circumstances do not require such a narrow construction of the potential liberty interest at stake here. First, *Dodds*, which notably involved review of a *substantive* due process claim, *see* 614 F.3d at 1205 n.12, does not hold that an arrestee does not have a procedural-due-process liberty interest before bond has been set. *See generally* 614 F.3d at 1192; *see also James v. Valdez*, No. CIV. 13-424 JCH/GBW, 2015 WL 13665445, at *10 (D.N.M. Mar. 16, 2015) ("The Tenth Circuit has not directly addressed the issue of what length of pretrial detention without a first appearance or bail hearing, if any, violates due process."). To hold that a detainee does not obtain a liberty interest in being free from detention until bail has been set would permit the government to detain an individual indefinitely, so long as the individual is never brought before a judge. Moreover, as set forth above, the Tenth Circuit has expressly recognized that "the right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Meechaicum*, 696 F.2d at 791-92. "This liberty right includes a right to be considered for bail

where the charged offenses are bailable under state law," *see James*, 2015 WL 13665445, at *11, as is the case here, as set forth below.   Absent any legal authority supporting the Sheriff Defendants' apparent argument that Plaintiff must point to express statutory or constitutional language explicitly providing "a liberty interest in obtaining bail within a specified time frame after arrest," *see* [Doc. 61 at 6], the court is not persuaded that the liberty interest at stake is appropriately so narrowly construed.

While Plaintiff alleges that she eventually received a bail hearing on September 6, 2019, [Doc. 95 at ¶ 67], she also alleges that she "did not receive a prompt bond setting," was "required to remain incarcerated for an indefinite period of time until she could appear before the Boulder County Court," [*id.* at ¶ 45], and that she was improperly incarcerated for fifteen days before bail was set.  [*Id.* at ¶¶ 68, 72].  She further alleges that there was a "policy, custom or practice of both the Mesa and Boulder Sheriff's Offices that transport could be delayed as long as fourteen days from the date of Ms. Reynolds' video appearance."  [*Id.* at ¶ 62]. At bottom, she asserts that she was deprived of liberty when she was detained indefinitely without the opportunity for bail, and these allegations form the basis of her procedural due process claim. *See, e.g.*, [*id.* at ¶¶ 148, 152-53 ("Ms. Reynolds has protected state-created and federal constitutional interests in pretrial liberty, and the right to bail. . . .   Ms. Reynolds was deprived of these protected interests without constitutionally adequate procedures because Defendants acted and failed to act for Ms. Reynolds to provide her with . . . a prompt bail setting. Ms. Reynolds was not granted a prompt bail setting: her bail setting was 15 days after her arrest.")].

A liberty interest "may arise from the Constitution itself, by reasons of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Indeed, "state statutes may create liberty

interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994). A state-created liberty interest arises from "a legitimate claim of entitlement," rather than an "abstract need or desire" or "a unilateral expectation." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Relevant here, Colorado law provides that "[a]ll persons shall be bailable by sufficient sureties," so long as the person has not been charged with a dangerous crime for which bail may be denied. Colo. Rev. Stat. § 16-4-101(1).[8] The Colorado Constitution contains a similar provision. *See* Colo. Const. art. II, § 19 ("All persons shall be bailable by sufficient sureties pending disposition of charges," except for those charged with certain dangerous crimes).[9] Thus, both the Colorado Constitution and Colorado statutory law mandate that an arrestee has a right to bail so long as the arrestee is not charged with one of the dangerous crimes listed in the statute or provision. Notably, Ms. Reynolds references this law in her Amended Complaint, *see, e.g.*, [Doc. 95 at ¶¶ 25-27, 77, 89, 117], alleges that she was not charged with an excludable offense (i.e., had an entitlement to bail), [*id.* at ¶ 77], and bases her procedural due process claim on this state-created interest. *See* [*id.* at ¶¶ 149-50]. While Colorado law does not expressly set forth a specific time frame in which a person must be given the opportunity to be considered for bond,[10] the court does not find this material here, where Plaintiff alleges that she wrongfully denied a timely bond hearing and unconstitutionally detained for two weeks until that hearing.

---

[8] The statute provides a limited number of exceptions to this rule that no Party argues are relevant here, including individuals who are accused of committing capital offenses or crimes of violence. *See* Colo. Rev. Stat. § 16-4-101(1)(a)-(b).

[9] This provision enumerates limited exceptions to this proposition, none of which any Party argues is applicable here. *See* Colo. Const. art. II, § 19(1).

[10] Effective April 1, 2022, Colorado law will require that all persons arrested be brought before a court for a bond setting no later than 48 hours after the arrestee is brought to the holding facility. *See* Colo. Rev. Stat. § 16-4-101(2)(a)(I).

Another district court in this Circuit has reached the same conclusion under similar state laws.  In *James*, the plaintiff was arrested in Arizona pursuant to a New Mexico no-bond warrant. 2015 WL 13665445, at *1.  The next day, he appeared at a hearing in Arizona state court, at which time the court advised the plaintiff that the sheriff's department would contact New Mexico officials to have the plaintiff transferred back to the state.  *Id.* at *2.  The plaintiff was not immediately transported back to New Mexico, and instead spent ten days in a detention center in Arizona.  *Id.* at *3.  And after he was transported to New Mexico, he was detained for approximately thirteen additional days before his initial appearance and preliminary examination. *Id.*  The plaintiff then sued for, *inter alia*, violations of his procedural and substantive due process rights.  *Id.* at *4.

On summary judgment, the *James* court rejected the defendants' argument that the plaintiff had failed to allege that his pretrial detention violated his due process rights, concluding that "pretrial detainees have a liberty right to freedom pending trial, and . . . the denial of that right must be reasonably related to a legitimate goal."  *Id.* at *11.  This finding was based not only on federal precedent establishing the "right to be considered for bail where the charged offenses are bailable under state law" but also the New Mexico Constitution, which at the time mandated that a bond order be entered within seven days of incarceration, as well as a New Mexico statute that mandated that an arrestee be presented to the court "without unnecessary delay."  *Id.*[11]

---

[11] This case is also analogous to *Kauble*, wherein the plaintiff was detained at the Oklahoma County Detention Center for "several months," but was never brought before a judge and was never given the opportunity to post bail, despite several requests from Plaintiff to be seen by a judge.  2018 WL 912285, at *1.  Noting that "[f]ederal courts have long recognized an individual has a liberty interest in being free from incarceration absent a criminal conviction," the court found that the plaintiff's allegations were sufficient to state a plausible Fourteenth Amendment due process claim.  *Id.* at *4.

For the reasons set forth above, the court finds that the Amended Complaint sufficiently alleges the existence of a liberty interest for purposes of her procedural due process claim.  *Cf. Meechaicum*, 696 F.2d at 792 (where a Kansas detainee was being held on charges that were "indisputably bailable offenses," he was "entitled to be considered for bail under Kansas law.").

***Deprivation of the Right***.  Next, Sheriff Lewis and Sheriff Pelle both argue that Ms. Reynolds cannot state a procedural due process claim because the allegations do not demonstrate that either Sheriff violated Rule 5 of the Colorado Rules of Criminal Procedure ("Rule 5"), which provides generally that courts shall set bail for defendants appearing on out-of-county warrants and that, if a defendant cannot make bail within 48 hours, the sheriff must return the defendant to the county which issued the warrant.  *See* [Doc. 61 at 8-9; Doc. 62 at 6-7]; *see also* Colo. R. Crim. P. 5(a)(3), (c)(3).  Each of these arguments appears to be based on the belief that Ms. Reynolds's procedural due process claim is grounded in a liberty interest purportedly established by Rule 5. *See* [Doc. 61 at 8 ("Even if Rule 5 created a constitutionally protected liberty interest (and it does not), Reynolds does not allege facts demonstrating that Sheriff Lewis violated Rule 5.")]; *see also* [Doc. 62 at 6 ("Even assuming Rule 5(a) created a constitutionally protected property or liberty interest, Reynolds failed to allege facts showing a plausible claim that Sheriff Pelle deprived her of that interest.")].  But Ms. Reynolds has expressly disclaimed that notion, asserting that, while the transport obligations in Rule 5 "are relevant to municipal liability and causation," she does not take the position that Rule 5 creates a liberty interest.  *See* [Doc. 73 at 8 n.5; Doc. 72 at 8 n.3]. Indeed, contrary to the Sheriff Defendants' arguments, Ms. Reynolds does not bring a claim based on any alleged deprivation of a right to be transported pursuant to Rule 5.  *See generally* [Doc. 95 at 27-31].  Rather, she brings a claim alleging a violation of her procedural and substantive due process rights under the United States Constitution, [*id.*], which are based on alleged infringements

of "protected state-created and federal constitutional interests in pretrial liberty, and the right to bail, flowing from the Colorado Constitution, Colorado statutes, . . . Colorado case law, and the U.S. Constitution." [*Id.* at ¶ 148].[12]  Accordingly, even assuming that Defendants Lewis and Pelle are correct in asserting that they complied with Rule 5—which is not a question properly before the court—such an assertion does not negate Ms. Reynolds's allegations that these Defendants nevertheless violated her due process rights.

In the alternative, Sheriff Lewis argues that to the extent Ms. Reynolds's procedural due process claim "is based on an alleged violation of the process outline in Colorado Criminal Rule 5," the claim "fails as a matter of law because a state official's failure to protect state law procedural rights does not constitute a violation of federal due process rights." [Doc. 61 at 7].  In so arguing, he relies on the concurring opinion in *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018). Setting aside the fact that this argument is too premised on the incorrect assertion that Ms. Reynolds asserts a liberty interest arising out of Rule 5, the court is respectfully not persuaded by this argument.  In *Moya*, the plaintiffs raised due process claims based on their prolonged detention without an arraignment, asserting a liberty interest in the right to an arraignment arising out of New Mexico law.  *Id.* at 1231-32, 1238.  The Tenth Circuit ultimately affirmed dismissal of the claims upon concluding that the plaintiffs had failed to plausibly allege the personal participation

---

[12] Although Ms. Reynolds also suggests her liberty interest flows from Rule 5, *see* [Doc. 95 at ¶ 148], the court accepts Ms. Reynolds's clarification in her Response that she does not assert a liberty interest based on Rule 5.  *See Uecker v. United States Forest Serv.*, No. 17-CV-02879-RM-KLM, 2019 WL 979105, at *9 (D. Colo. Feb. 28, 2019) (accepting the plaintiffs' disclaimer in response to motion to dismiss that they were not bringing any claims pursuant to the Administrative Procedure Act); *see also Brown v. Bd. of Educ. of Pueblo Sch. Dist. No. 1*, No. 05-cv02079-WYD-BNB, 2007 WL 389947, at *5 (D. Colo. Feb. 1, 2007) (where plaintiff clarified in her complaint that she did not raise certain claims, finding that the defendants' motion to dismiss those claims was moot).

of the sheriff defendants, as the sheriff defendants had no ability to schedule arraignments and thus could not have caused any delay in arraignment. *Id.* at 1232, 1236.

The *Moya* concurrence disagreed with the majority's decision to frame the asserted liberty interest as a right to an arraignment, opining that the right to an arraignment is nothing more than "an expectation of receiving process" which, without more, cannot constitute a protected liberty interest. *Id.* at 1241-42 (McHugh, J., concurring). Thus, the concurrence indicated that it would have framed the protected interest as the right to freedom pending trial, which might be "duly honored via a timely bail determination, but the timely bail determination is a means, not an end." *Id.* at 1242. The concurrence further stated that, although a state is free to create procedural rights which "protect[] the underlying right to bail," the "failure of its state officials to protect state-law procedural rights is not a Fourteenth Amendment violation, so long as federal due process requirements (which may well be lower) are satisfied." *Id.* In response to the concurrence, the majority opinion explained that it framed the relevant liberty interest based on what the plaintiffs had alleged in their complaint. *Id.* at 1237.

The *Moya* concurrence—which is not binding on this court, *see Frasier v. Evans*, 992 F.3d 1003, 1017 (10th Cir. 2021)—does not change the court's analysis. Notwithstanding the fact that Ms. Reynolds does not assert a liberty interest in Rule 5 compliance, although Ms. Reynolds does assert that she has a liberty interest in bail generally, she also consistently asserts a liberty interest in pretrial freedom. *See, e.g.*, [Doc. 95 at ¶¶ 148, 155-56, 163]. Thus, even if the "failure of . . . state officials to protect state-law procedural rights is not a Fourteenth Amendment violation," *Moya*, 895 F.3d at 1242—i.e., Ms. Reynolds does not have a protected liberty interest in bail— Ms. Reynolds nevertheless asserts a violation of her due process rights based on an infringement

of her liberty interest in freedom pending trial, a right which the Moya concurrence recognizes and applies.  *See Moya*, 895 F.3d at 1242.  In sum, the court is not persuaded by this argument.[13]

   ***The Appropriate Level of Process***.  Finally, Sheriff Lewis and Sheriff Pelle assert that Ms. Reynolds cannot state a procedural due process claim because she received the appropriate level of process required by the Constitution.  [Doc. 61 at 10; Doc. 62 at 8].  The Sheriff Defendants' arguments—and Plaintiff's counterarguments—focus not on the Sheriff Defendants' actions, but on the process afforded to Ms. Reynolds generally.  More specifically, Sheriffs Lewis and Pelle argue that due process requires only a pre-deprivation hearing before a judge, and thus, the advisement hearing that Ms. Reynolds had before the Mesa County judge was "all the process that was required."  [Doc. 61 at 9-10; Doc. 62 at 8].  Ms. Reynolds responds that her allegations demonstrate that the hearing before the Mesa County judge failed to comport with due process requirements because she alleges that (1) she did not receive a bond hearing; (2) the bail decision was predetermined; (3) Ms. Reynolds was not informed of the Administrative Order at the hearing; and (4) she was not permitted to introduce evidence or make arguments in support of bail.  [Doc. 73 at 9-10; Doc. 72 at 10-12].[14]

---

[13] Insofar as Sheriff Lewis argues that the burden of transfer was on Boulder County, not the Mesa County Sheriff, [Doc. 61 at 9], such an argument impermissibly wades into the merits of Plaintiff's claims and is not appropriately raised in the context of a motion to dismiss.  *See Kauble*, 2018 WL 912285, at *3 ("[The BOCC] argues that [the plaintiff] has filed suit against the wrong party and his claims are without merit because the BOCC has no authority to act in areas of detaining or releasing inmates. That may be true, and, if so, the ordinary course of litigation will root it out. But the BOCC may not short-circuit the usual process, flip the burden of persuasion, and permit itself to submit competing facts to support its argument.") (alternation marks changed and quotation omitted).  The court declines to undertake a substantive analysis of the Colorado Rules of Criminal Procedure in determining whether the Amended Complaint sufficiently states a due process claim.

[14]  In addition, Ms. Reynolds also argues that that the procedures afforded to her were constitutionally deficient because due process requires that bail be set within 48 hours of arrest, or, at a minimum, "promptly" after an arrest, and she remained incarcerated without bail for two weeks.  [Doc. 73 at 8-10; Doc. 72 at 9-10].  However, this argument does not directly address Sheriff Lewis's and Sheriff Pelle's argument that, because a hearing was held, Ms. Reynold

"[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542. "[T]he process due in any given instance is determined by weighing 'the private interest that will be affected by the official action' against the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  But at bottom, "[t]he Supreme Court has consistently held procedural due process requires notice and a meaningful opportunity to be heard." *United States v. Jones*, 768 F.3d 1096, 1105 (10th Cir. 2014) (citing cases).

Because the Parties focus on the hearing at which Plaintiff appeared, so too does the court. Neither Sheriff Lewis nor Sheriff Pelle addresses Plaintiff's allegations that the hearing itself was deficient and failed to provide adequate process; instead, they focus on the mere fact that some hearing occurred.  *See generally* [Doc. 86; Doc. 87].  But while Ms. Reynolds concedes she had a hearing, she further alleges that such a hearing was insufficient to meet the requirements of due process.  For example, Ms. Reynolds alleges that she did not receive clear and advance notice of the hearing or notice of the purpose of the hearing, and she states that at the hearing, she was not informed of the nature of the charges against her or the basis of the hearing judge's decision to

---

received appropriate process.  Because the court may issue a recommendation as to Defendants' argument without addressing this suggested right, the court declines to pass on Ms. Reynolds's arguments as to whether due process requires a bail setting within 48 hours after arrest. *See United States v. Krueger*, 809 F.3d 1109, 1115 (10th Cir. 2015) ("[C]onsistent with the fundamental rule of judicial restraint, we decline to reach a constitutional question that is not necessary to our resolution of this [case].").

deny bail. [Doc. 95 at ¶¶ 37, 39]. She further alleges that did not have an opportunity to be heard at the hearing with respect to the court's denial of bail and was not given the opportunity to present evidence or argument in support of bail. [*Id.* at ¶ 37]. According to Ms. Reynolds, the hearing lasted fewer than 2 minutes. [*Id.* at ¶ 38]. Ms. Reynolds alleges that this hearing "did not provide the process required" by the Due Process Clause. [*Id.*].

Supreme Court precedent is clear that the amount of process that is due depends on the circumstances of the case, weighing the private interest at stake and the government's competing interests. *See, e.g.*, *Hamdi*, 542 U.S. at 529; *see also Norris v. Univ. of Colo.*, 362 F. Supp. 3d 1001, 1017 (D. Colo. 2019) ("[T]here is necessarily not a universal set of rules with which one can comply to satisfy procedural due process in each unique situation."). Neither Sheriff provides any legal support for their conclusion that the mere fact that a hearing occurred is sufficient to comport with due process requirements here, and the court declines to conduct the Parties' legal research for them. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

Due process generally requires (1) notice and (2) an opportunity to be heard. *Loudermill*, 470 U.S. at 542; [Doc. 61 at . Plaintiff alleges that she was denied both components. [Doc. 95 at ¶¶ 37-39]. Taking Plaintiff's allegations as true, the court finds that she has adequately alleged that her hearing was insufficient to comply with due process requirements. *See Norris*, 362 F. Supp. 3d at 1019 (finding that, where plaintiff received a hearing but was not permitted an adequate opportunity to review the evidence or a sufficient time to respond to the charges, the allegations "regarding the timing of the notice and his conditions to access of the investigation file allege a facially plausible claim that [the plaintiff's] due process rights were violated"); *Hafed v. Fed. Bureau of Prisons*, No. 07-cv-01499-ZLW-KMT, 2009 WL 10690766, at *6 (D. Colo. Mar. 6,

2009) (recommending denial of motion to dismiss where the defendant argued that the plaintiff, prior to the imposition of prison restrictions, received appropriate process through an administrative review procedure, but where the plaintiff alleged that that procedure failed to give adequate due process protections because he did not receive notice of the factual basis for imposing the restrictions and that he was not provided an opportunity to be heard); *cf. Merrifield v. Bd. of Cty. Comm'rs for Cty. of Santa Fe*, No. CIV 08-122 LCS/ACT, 2008 WL 11322137, at *5 (D.N.M. June 17, 2008) (denying motion to dismiss where the court could not determine on the record whether the hearing provided the plaintiff sufficient due process).

For all of these reasons, the court is respectfully not persuaded by the Sheriff Defendants' arguments related to Plaintiff's procedural due process claim.  Accordingly, the court respectfully **RECOMMENDS** that the Pelle Motion to Dismiss and the Lewis Motion to Dismiss be **DENIED** insofar as they seek dismissal of this claim.[15]

### 2.    Substantive Due Process

"[T]he touchstone of due process is protection of the individual against arbitrary action of government."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  In addition to guaranteeing fair procedures, the Due Process Clause of the Fourteenth Amendment "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 840)).  "[T]he Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a 'fundamental' right, . . . and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks

---

[15] Sheriff Pelle's argument that Plaintiff's procedural due process claim should be dismissed for failure to allege municipal liability is addressed below.

the judicial conscience."   *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997) and *Lewis*, 523 U.S. at 846).

In addition, government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."   *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).   "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."   *Id.* at 694.   In order to state a claim for municipal liability (a "*Monell*" claim) under § 1983, a plaintiff must allege (1) the existence of an official policy or custom; (2) that the official policy or custom was the driving force behind the constitutional violation alleged; and (3) that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."   *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 771 (10th Cir. 2013).

Sheriffs Pelle and Lewis raise similar arguments with respect to Plaintiff's substantive due process claim.[16]   First, the Sheriff Defendants attack Plaintiff's *Monell* allegations, arguing that Plaintiff has failed to allege the existence of a municipal policy or custom, [Doc. 61 at 12; Doc. 62 at 10], and has failed to establish a causal connection between any governmental policy and any alleged constitutional violation.  [Doc. 61 at 13; Doc. 62 at 11].   In addition, the Sheriffs argue that Ms. Reynolds fails to allege facts showing that they were deliberately indifferent to an almost

---

[16] Sheriff Lewis argues only that Ms. Reynolds's substantive due process claim contains insufficient allegations for municipal liability; he does not raise such an argument with respect to her procedural due process claim.  *See* [Doc. 61 at 11].  Sheriff Pelle appears to assert this argument as to both of Plaintiff's claims.  *See* [Doc. 62 at 10].  For purposes of clarity and concision, the court addresses Sheriff Pelle's argument in the context of the court's substantive due process analysis, but applies an analysis applicable to both of Plaintiff's claims.

inevitable constitutional injury.   [Doc. 61 at 14; Doc. 62 at 12].   Moreover, they attack the substance of Ms. Reynolds's substantive due process claim, contending that the Amended Complaint fails to allege conduct that shocks the conscience.  [Doc. 61 at 15; Doc. 62 at 8].   The court addresses these arguments in turn.

### a.   Municipal Liability

As set forth above, because Ms. Reynolds has sued Sheriff Pelle and Sheriff Lewis in their official capacities, she must allege that a municipal policy or custom, which was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury, was the driving force behind her alleged constitutional injury.  *Schneider*, 717 F.3d at 771.  The Sheriff Defendants posit that Ms. Reynolds has failed to adequately allege any of the three *Monell* elements in her Amended Complaint.

***Official Policy or Custom***.   Both Sheriff Defendants assert that Ms. Reynolds fails to raise allegations demonstrating the existence of an official policy or custom for *Monell* purposes.   As a preliminary matter, the court is not persuaded by the argument raised by Sheriff Lewis, who argues not that Ms. Reynolds's factual allegations are deficient, but <u>only</u> that Ms. Reynolds "has no protected liberty interest in obtaining bail within a certain time period" and thus, even if there were an official policy, she "cannot establish that such a policy would violate her federal due process rights."  [Doc. 61 at 12].  The court has already rejected this confined construction of Plaintiff's asserted liberty interest, and Sheriff Lewis offers no legal authority suggesting that this court should find otherwise. *See generally* [*id.*].   Accordingly, the court proceeds only on the arguments raised by Sheriff Pelle.

A plaintiff may show the existence of an official policy custom by raising allegations establishing:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration marks omitted). Ms. Reynolds's *Monell* claims do not appear to be based on a formally promulgated policy, as the Amended Complaint does not identify any such formal written policy. *See generally* [Doc. 95]; *see also Kowalski v. Shrader*, No. 21-cv-00827-NYW, 2022 WL 19422, at *15 (D. Colo. Jan. 3, 2022) ("To raise a deliberate indifference *Monell* claim based on the existence of an official policy, 'a plaintiff should [identify and] set out the text of that policy.'") (quoting *Leonhard v. Correct Care Sols., LLC*, No. 19-cv-00600-PAB-STV, 2020 WL 1694377, at *8 (D. Colo. Apr. 7, 2020)). Instead, Ms. Reynolds's *Monell* claims are based on (1) the failure to train or failure to implement a policy, *see, e.g.*, [Doc. 95 at ¶¶ 93, 119 (alleging that the Sheriffs failed to implement policies to ensure timely transport and failed to train employees on the need to ensure timely transport)]; (2) an informal practice or custom, see [*id.* at ¶ 94]; and (3) a decision by a final policymaker. [*Id.* at ¶¶ 87, 101, 112]. The court thus must determine whether the Amended Complaint sufficiently alleges municipal liability under any of these theories.

Informal Custom. A plaintiff may state a *Monell* claim based upon "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788. "With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is

required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a [prison official's] statements attesting to the policy's existence." *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015)).

Sheriff Pelle argues that the Amended Complaint is "devoid" of facts establishing a pattern of similar constitutional violations. [Doc. 62 at 11]. The court respectfully agrees. The Amended Complaint does not contain any factual allegations related to any other MCDF detainees whose transport was similarly delayed. *See generally* [Doc. 95]. While Ms. Reynolds directs the court to her general allegations of an informal policy or custom, *see* [Doc. 72 at 18], these allegations are insufficient to establish a "widespread practice" that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788. Nor does the Amended Complaint contain allegations suggesting the existence of other "evidence, such as a [prison official's] statements attesting to the policy's existence." *Sexton*, 530 F. Supp. 3d at 1070. Accordingly, the court finds that the allegations are insufficient to state a *Monell* claim based on an unofficial widespread practice or custom.

Failure to Train or Failure to Implement a Policy. Insofar as Ms. Reynolds alleges either a failure to train or a failure to implement a policy related to prompt transport of detainees, the court addresses these *Monell* theories together. *See Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, at *6 (D. Colo. Feb. 11, 2011) ("[A] failure to train theory has been seen as a supervisory liability claim that, at bottom, implicates a supervisor's implementation of a policy.") (citing *Dodds*, 614 F.3d at 1209 (Tymkovich, J., concurring)); *Kemp v. Law.*, 846 F.

Supp. 2d 1170, 1173 (D. Colo. 2012) (considering allegations of a failure to train and failure to implement a policy together).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Where a *Monell* claim is based on an alleged failure to train, the plaintiff's allegations must "reflect[] a 'deliberate' or 'conscious' choice by a [government entity]." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62 (quotation omitted). But "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* "Notice of particular deficiencies in a training program is the crux of a failure-to-train theory." *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017).

As set forth above, the Amended Complaint contains no allegations of any similar allegedly unconstitutional conduct from which an inference could be drawn that Sheriff Pelle had notice of

any deficiencies in his training or a need for more robust policies. *See generally* [Doc. 95]. In other words, Plaintiff fails to establish the "crux" of the failure-to-train theory. *Est. of Lobato*, 2017 WL 1197295, at *7. Given the Supreme Court's instruction that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick*, 563 U.S. at 61, this court finds that the Amended Complaint fails to plead allegations to sufficient for municipal liability based on a failure-to-train theory with respect to Sheriff Pelle.

　　　　<u>Decisions of Employees with Final Policymaking Authority</u>.  Finally, while Ms. Reynolds does not expressly argue in her Response that she has alleged the existence of a municipal policy based on a decision of an employee with final policy making authority, *see* [Doc. 72 at 17-19], she elsewhere argues that her allegations concerning Ms. Pelletier's actions "provide an independent basis to find municipal liability."  [*Id.* at 20-21].  The court construes this as an argument that her Amended Complaint sufficiently alleges a municipal policy based on the actions of a final policymaker.  *See Bryson*, 627 F.3d at 788 (final decision by municipal policymaker can establish an official municipal policy).  In her Amended Complaint, Ms. Reynolds alleges that Sheriff Pelle delegated final policymaking authority regarding transport decisions "for individuals detained on Boulder warrants in other jurisdictions" to Ms. Pelletier, the Transport Coordinator.  [Doc. 95 at ¶ 101].  Plaintiff alleges that Ms. Pelletier "had the final authority to decide when and how such a defendant would be transported to a Boulder court," [*id.*], but that Ms. Pelletier failed to act or make arrangements to timely transport Ms. Reynolds from MCDF to Boulder County.  [*Id.* at 105-06].  She asserts that Ms. Pelletier's failure to act on Plaintiff's behalf "created an obvious and substantial risk of precisely the kind of the lengthy, unconstitutional incarceration endured by Ms.

Reynolds in this case and evinced deliberate indifference to Ms. Reynolds' due process rights." [*Id.* at ¶ 112].

"[I]f a local government delegates final policy-making authority to a particular employee, any custom or policy created by that employee is the custom or policy of the local government as well." *Herrera v. Cty. of Santa Fe*, 213 F.Supp.2d 1288, 1292 (D.N.M. 2002). Moreover, the Supreme Court has instructed that, "under appropriate circumstances," municipal liability may be imposed based on a "single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also id.* at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). Sheriff Pelle does not argue that Plaintiff's allegations are insufficient to allege a municipal policy based on Ms. Pelletier's failure to act. *See* [Doc. 62].[17] Accordingly, the court finds that Ms. Reynolds has sufficiently alleged an official Mesa County municipal policy based on the final decision of a policymaker.

*Causation*.   Next, Sheriff Lewis and Sheriff Pelle argue that Ms. Reynolds fails to state facts demonstrating that any municipal policy or practice caused her alleged constitutional deprivation. Sheriff Lewis argues that Plaintiff "alleges that her alleged deprivation was caused solely by Defendant Flynn and the Mesa County Court," and because the injury alleged "is caused solely by the conduct of the Court, not [Sheriff Lewis]," Ms. Reynolds "cannot state a substantive

---

[17] While Sheriff Pelle raises such argument in his Reply, [Doc. 87 at 6], the court does not consider arguments raised for the first time in a reply brief. *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017); *Fischer v. Adams Cty. Sch. Dist. No. 12*, No. 05-cv-01621-REB, 2006 WL 407820, at *2 n. 1 (D. Colo. Feb. 16, 2006) ("It is improper for a party to reserve its best case, even if ostensibly raised in response to its opponent's arguments, for its reply, when the opponent has no ready means of responding.").

due process claim against the Sheriff." [Doc. 61 at 13]. Sheriff Pelle raises the same argument. [Doc. 62 at 11-12].

The court respectfully disagrees with the Sheriff Defendants. The court construes the Amended Complaint as asserting two wrongful acts: first, the issuance of the Administrative Order by Judge Flynn, and second, the failure to transport by Sheriffs Lewis and Pelle. *See, e.g.*, [Doc. 95 at ¶¶ 83, 110, 144]. Sheriff Lewis and Sheriff Pelle have cited no legal authority that an alleged due process violation can only have one cause. *See* [Doc. 61; Doc. 62]. Rather, "[t]he Tenth Circuit has applied liability for those defendants who proximately caused an injury complained-of under § 1983, and that the 'conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant],' so long as there was not a superseding-intervening cause of a plaintiff's harm." *Chavez v. Cty. of Bernalillo*, 3 F. Supp. 3d 936, 977 (D.N.M. 2014) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006)). Because the Sheriff Defendants fail to support their argument with any legal authority, the court is not persuaded by their argument. Moreover, without passing on whether any of Ms. Reynolds's allegations might be deemed inconsistent, the court simply notes that the Federal Rules permit plaintiffs "to pursue alternative and legally inconsistent theories up until the point where one of the inconsistent theories prevails to the exclusion of the others." *Bd. of Cty. Comm'rs of Cty. of La Plata v. Brown Grp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1193 (D. Colo. 2009); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

To state a § 1983 claim, Plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. Here, Plaintiff alleges the fact of this causal link: she alleges that had she been transferred in a timelier manner,

her detention without bail would have been shorter.  *See* [Doc. 95 at ¶¶ 110, 144].  The court finds this sufficient, at the pleading stage, to allege the requisite causal link.

**Deliberate Indifference**.  Finally, the Sheriffs argue that Ms. Reynolds fails to allege facts showing that they were deliberately indifferent to an inevitable constitutional injury.  [Doc. 61 at 14-15; Doc. 62 at 12-13].   Because Sheriff Pelle's arguments focus only on Ms. Reynolds's allegations of an unofficial policy established by Sheriff Pelle, rather than the allegations as to Ms. Pelletier, *see* [Doc. 62 at 12-13], and because the court has already concluded the allegations as to any unofficial policy to which Sheriff Pelle acquiesced are insufficient to allege the existence of a municipal policy, the court addresses only the argument raised by Sheriff Lewis.  Sheriff Lewis argues that "even if [he] was aware that a Mesa County judge would not set bail, [Ms. Reynolds] fails to allege that knowledge of the failure to set bail for out of county detainees would inevitably lead to a constitutional deprivation because . . . there is no constitutional right to a bail hearing within a specific time frame."  [*Id*. at 15].

Again, this classification of the right at stake is overly restrictive and does not warrant dismissal.  Plaintiff's due process claims are based on the right to freedom pending trial, which the Supreme Court has indicated "is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment."  *Meechaicum*, 696 F.2d at 791-92; *see also Woodard*, 912 F.2d at 1300 (a plaintiff can base a substantive due process claim on allegations that the government "*deprived a person* of life, *liberty*, or property in a manner so arbitrary it shocks the judicial conscience") (emphasis added).  Plaintiff alleges that her due process rights were violated by Sheriff Lewis because Sheriff Lewis failed to establish sufficient policies governing the transportation of detainees to other jurisdictions, which caused "Ms. Reynolds to sit in jail without bond until convenient for the transport department of the Sheriff's Office to transport Ms.

Reynolds." [Doc. 95 at ¶¶ 131-32]. For these reasons, the court is unpersuaded by Sheriff Lewis's arguments.

For all of the above reasons, the court is not persuaded by the Sheriff Defendants' arguments that Plaintiff has failed to sufficiently allege the requisite elements of a municipal liability claim. Thus, the court turns to these Defendants' alternative argument—that Ms. Reynolds has failed to allege conduct that shocks the conscience, as required to succeed on a substantive due process claim.

### b.      Conscience-Shocking Conduct

"The substantive due process doctrine has two strands: 'One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience.'" *Kuyper v. Bd. of Cty. Comm'rs of Weld Cty.*, No. 09-cv-00342-PAB-MEH, 2010 WL 1287534, at *4 (D. Colo. Mar. 30, 2010) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). The Tenth Circuit "appl[ies] the fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action." *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1117 (10th Cir. 2021); *see also Woodard*, 912 F.3d at 1300.[18] Before turning to the sufficiency of Plaintiff's allegations, the court first must determine the appropriate analytical framework through which to review the claim at hand—the fundamental-rights approach or the conscience-shocking approach.

---

[18] The Tenth Circuit previously stated that the two tests are not mutually exclusive and may both be utilized in any given case. *See Seegmiller*, 528 F.3d at 769. However, the Tenth Circuit later clarified that this was "dicta," *see Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 n.1 (10th Cir. 2015), and has most recently applied the bifurcated approach which turns on the nature of the challenged action. *See, e.g.*, *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019); *Woodard*, 912 F.3d at 1300.

*Applicable Test*.  In her Amended Complaint, Plaintiff alleges *both* that her fundamental rights were infringed *and* that Defendants engaged in conscience-shocking conduct.  *See, e.g.*, [Doc. 95 at ¶¶ 162-63].  And while Sheriff Pelle cursorily states that he "did not deprive Reynolds of any rights, let alone fundamental rights protected by substantive due process," [Doc. 62 at 8], Sheriff Pelle and Sheriff Lewis focus their dismissal arguments on whether Ms. Reynolds adequately alleges conscience-shocking conduct.  [Doc. 61 at 14-17; Doc. 62 at 8-9].  In her responsive briefing, Ms. Reynolds suggests that *both* tests apply, or either test *could* apply, asserting that "the Tenth Circuit also applies the fundamental rights approach when a plaintiff challenges governmental policies," as is the case here.  [Doc. 71 at 16; Doc. 72 at 14 (citing *Abdi v. Wray*, 942 F.3d 1019, 1027-28 (10th Cir. 2019)].

The court respectfully disagrees that both tests could apply here.  The Tenth Circuit has recently made clear that the two tests are not interchangeable.  *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).  And the case Plaintiff relies upon in suggesting the applicability of both tests—*Abdi*—is distinguishable.  In *Abdi*, the Tenth Circuit found that the fundamental-rights test was the appropriate analytical framework through which to consider the plaintiff's claims that, by placing American citizens on a terrorist-watch list, certain government agencies had violated those citizens' fundamental right of movement.  942 F.3d at 1027-28.  While the court acknowledged that the "alleged harm stem[med] from executive agency action rather than an Act of Congress"—such that typically, the conscience-shocking test would apply—it ultimately concluded that "the unique circumstances presented in [the] case" warranted the fundamental-rights analysis.  *Id*. at 1027 (emphasis added).

The *Abdi* court's decision to swap the generally applicable test was based on the nature of the challenged activity.  In *Adbi*, the plaintiff did not "object to an independent, 'specific act of a

governmental officer,'" but instead "to the concerted action of several agency employees, undertaken pursuant to broad governmental policies, that resulted in his name being included" on the watch list.  *Id.* (citing *Lewis*, 523 U.S. at 846-69).  The court concluded that the plaintiff's action was "akin to a challenge to legislative action because, as with an act of a lawmaking body, the federal government here is attempting, through policy, to achieve a stated government purpose: to 'protect against terrorism.'"  *Id.* at 1027-28.  Thus, the Tenth Circuit found that it was "most appropriate to analyze . . . whether the defendants' implementation of the policies that govern [the plaintiff's] actions violate[d] [the plaintiff's] fundamental rights, and, if so, whether the policies are narrowly tailored to achieve a compelling government purpose."  *Id.* at 1028.

Here, Ms. Reynolds' substantive due process is not rooted in any official policy or statement, and she does not allege that the Sheriff Defendants' actions were taken to achieve any stated government purpose.  Instead, her substantive due process claim is based on Defendants' alleged inaction: "By failing to take action to bring Ms. Reynolds before a judge for a bond- setting, as detailed herein, Defendants interfered with her fundamental right to pretrial liberty and were deliberately indifferent to her welfare as a detainee and the ongoing violation of her constitutional rights."  [Doc. 95 at ¶ 163].  And throughout the Amended Complaint, the allegations primarily and consistently identify either a *lack* of official policy or an *un*official policy as the root cause of the constitutional violations.  *See, e.g.*, [*id.* at ¶ 94 (alleging that Sheriff Pelle "allowed an official custom, policy, and/or practice to take root, by which Boulder County Sheriff's Office employees routinely fail to transport detainees held in out-of-county jails on 'no bond' Boulder warrants in a timely fashion."); *id.* at ¶ 95 ("[I]nstead of creating policies to ensure compliance with the U.S. and Colorado Constitutions, C.R.S. §§ 16-4-101-103, . . . the Boulder County Sheriff established and maintains an official custom, policy and/or practice of ignoring its responsibility under . . . the

U.S. and Colorado Constitutions to promptly transport a detainee held in an out-of-county jail on a Boulder County warrant who does not post bond or whose bond has not been set."); *id.* at ¶ 100 ("If Defendant Pelle had had a policy or procedure to ensure that Boulder County followed the mandates of . . . the Colorado and U.S. Constitutions, his Sheriff's Office employees would have promptly transported Ms. Reynolds to appear before a Boulder judge for a bond setting and she would have secured timely release.").

Thus, the court cannot conclude that this case is similar to the "unique circumstances" presented in *Abdi*, where the plaintiff challenged concerted actions taken pursuant to a stated governmental policy.   Notably, in *Abdi*, the Tenth Circuit cited *Dawson v. Board of County Commissioners*, 732 F. App'x 624, 630 (10th Cir. 2018) (unpublished), in support of its application of the fundamental-rights test, stating: "At least one other panel of this court has applied the fundamental-rights approach in a case where, as here, a government entity's implementation of its <u>official</u> policy is alleged to have caused a substantive due process violation," *Abdi*, 942 F.3d at 1028 n.1 (emphasis added); *see also Dawson*, 732 F. App'x at 628 (plaintiff asserting municipal liability based on two official written policies)—which suggests to the court that where the challenged activity is based on the lack of an official policy, an unofficial policy, or the failure to act, the conscience-shocking test is the appropriate one.[19]

*Whether the Governmental Conduct Shocks the Conscience*.   A substantive due process claim may arise out of "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them," *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), but

---

[19] Indeed, to find otherwise would render all municipal liability claims subject to application of the fundamental-rights test, rather than the conscience-shocking test, as all municipal liability claims must allege some sort of municipal policy or practice.   *Monell*, 436 U.S. at 690; *see also Bryson*, 627 F.3d at 788 (explaining that an official policy or custom can be demonstrated by showing an "informal custom amounting to a widespread practice").

only for "the most egregious official conduct [that] can be said to be arbitrary in the constitutional sense." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008); *see also Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.").  Conscience-shocking behavior requires allegations of more than mere negligence, *see id.*, and "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *Lewis*, 523 U.S. at 849.

The conscience-shocking standard is difficult to define, *Moore*, 438 F.3d at 1041, but "[c]onduct that shocks the judicial conscience must be egregious and outrageous." *Est. of Carrigan v. Park Cty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019).  To meet this high threshold, a plaintiff must show that "a government actor arbitrarily abused his authority or employed it as an instrument of oppression," *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013), and the challenged conduct must meet a "degree of outrageousness and magnitude of potential or actual harm [that is] truly conscience shocking."  *Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir. 2012).  In analyzing Plaintiff's claims, the court is mindful that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another," and "preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."  *Lewis*, 523 U.S. at 850.

Sheriff Lewis argues that the "allegations that [Ms. Reynolds] was held for 11 days after her initial hearing with the judge while the counties coordinated cross-state transport is far from conscience shocking.  [Doc. 61 at 15].  According to Sheriff Lewis, "in order to shock the

conscience, a plaintiff must be detained for an extended period of time after arrest without any appearance before a judge." [*Id.* at 16 (emphasis omitted)]. Sheriff Pelle asserts a similar argument. *See* [Doc. 62 at 9]. Plaintiff disagrees. She that the failure to timely transport her or to arrange transport for her, in the context of her and her attorneys' requests for transfer, shocks the conscience because it resulted in her 15-day detention without bond. [Doc. 72 at 15; Doc. 73 at 16].

The Parties' arguments focus primarily on the length and attendant conditions of Ms. Reynolds's detention and the egregiousness thereof. *See* [Doc. 61 at 15-16; Doc. 62 at 9-10; Doc. 73 at 15-16]. But "the test is not whether the end result is conscience shocking; rather, it is whether *the particular defendants' conduct is* conscience shocking." *Manzanares v. Roosevelt Cty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1301 (D.N.M. 2018) (emphasis added); *see also Moore*, 438 F.3d at 1040 ("The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether *the challenged government action* shocks the conscience of federal judges.'") (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (emphasis added)). Here, Plaintiff's *Monell* claims are based on (1) Sheriff Lewis's alleged implementation of unofficial policies, failure to implement official policies, and/or alleged failure to train, as well as Ms. Dittman's alleged failure to arrange transport as a final policymaker,[20] and (2) Ms. Pelletier's alleged failure to arrange transport as a final policymaker; thus, the court must determine whether this alleged conduct was conscience shocking. *Cf. Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992) (where municipal liability claim was based on alleged failure to train,

---

[20] Sheriff Lewis did not adequately challenge the sufficiency of the allegations as to the failure to train or implementation of an unofficial policy. Thus, the court's finding that such allegations were deficient as to Sheriff Pelle does not prevent the court from considering these allegations with respect to Sheriff Lewis.

analyzing whether such alleged failure was conscience-shocking); *Dawson*, 2017 WL 5188341, at *8 (where inmate alleged his prolonged detention was based on jail policies, analyzing whether the policies shocked the judicial conscience).

Having reviewed the allegations in the Amended Complaint, the Parties' arguments, and the applicable case law, the court respectfully does not find that the allegations rise to the level of conscience-shocking conduct. While Ms. Reynolds's prolonged detention without the opportunity for bail is undoubtedly troubling, the court does not find that the allegations of the Sheriff Defendants' *conduct* shocks the judicial conscience. In essence, Ms. Reynolds alleges that, on August 28, 2019, Ms. Dittman and Ms. Pelletier failed to ensure Plaintiff's prompt transportation in that they scheduled her transportation for the following week, rather than immediately, despite daily requests for transport from Ms. Reynolds as well as numerous phone calls from Ms. Reynolds's defense attorney.[21] *See, e.g.*, [Doc. 95 at ¶¶ 47-48, 50-55]. Thus, while Plaintiff asserts that they should have acted more promptly, Plaintiff nevertheless alleges that Ms. Dittman and Ms. Pelletier took *some action* to secure Ms. Reynolds's transport. *See generally* [*id.*]. To be sure, the court does not suggest that such actions were appropriate or sufficient, nor does the court hold that so long as a defendant takes some inadequate action, their conduct cannot rise to the appropriate level of egregiousness and shock the conscience. However, under the circumstances of this case and the facts alleged herein, the court finds that any argument that Ms. Dittman and Ms. Pelletier should have acted more quickly or with more care to Ms. Reynolds's rights, or that Sheriff Lewis should have better trained his employees or implemented a policy about transporting detainees, is akin to an assertion of negligence. *Compare Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998) (court finding that where county defendants placed detainee on "will call" list

---

[21] Ms. Reynolds does not allege the dates on which these calls were made. *See* [Doc. 95 at ¶ 48].

for court but then "took *no action* other than waiting for word of a hearing date from the court" and made "no efforts on behalf of" the detainee, such that detainee was detained for 57 days, the conduct was conscience-shocking) (emphasis added); *compare Hayes v. Faulkner Cty., Ark.*, 388 F.3d 669, 674-75 (8th Cir. 2004) (finding that jail administrator's decision to "do nothing" in response to a detainee's grievance asking for an initial appearance after 23 days of detention, where the detainee was ultimately detained for 38 days, shocked the conscience); *cf. Manzanares*, 331 F. Supp. 3d at 1301 (finding that, while the fact that an inmate was attacked with a pickaxe was shocking, the county's alleged failure to train its employees about classifying inmates' violent history was "more akin to negligence").

Accordingly, the court finds that the Amended Complaint fails to allege conscience-shocking conduct, and thus fails to state a substantive due process claim against Sheriff Lewis and Sheriff Pelle.  The court respectfully **RECOMMENDS** that the Pelle Motion to Dismiss and the Lewis Motion to Dismiss be **GRANTED** insofar as they seek dismissal of this claim, and further **RECOMMENDS** Plaintiff's Claim Two be **DISMISSED without prejudice** as to Sheriffs Lewis and Pelle.

## II.     Flynn Motion to Dismiss

The court now turns to the arguments raised by Judge Flynn.  Judge Flynn argues that Plaintiff's claims against him should be dismissed under Rule 12(b)(6) because (1) he is entitled to judicial immunity; (2) he is protected by legislative absolute immunity; (3) he cannot be held personally liable for any alleged legal errors; (4) he is entitled to qualified immunity; and (5) Plaintiff fails to state a claim upon which relief can be granted.  *See generally* [Doc. 63].

## A. Judicial Immunity[22]

Judges are generally immune from civil liability for judicial acts. *See Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981). The purpose of the judicial-immunity doctrine is to benefit the public, to ensure that "judges can perform their functions without harassment or intimidation." *Van Sickle v. Holloway*, 791 F.2d 1431, 1434-35 (10th Cir. 1986). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." *Forrester v. White*, 484 U.S. 219, 226-27 (1988). Judicial immunity is applicable in claims arising under § 1983, *see Van Sickle*, 791 F.2d at 1435, but applies only to individual-capacity claims. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011).

There are two exceptions to the doctrine of judicial immunity: "(1) when the act is not taken in the judge's judicial capacity, and (2) when the act, though judicial in nature, is taken in the complete absence of all jurisdiction." *Stein v. Disciplinary Bd. of Supreme Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008) (quotation and alteration marks omitted). "Stated differently, judges are liable only when they act in 'clear absence of all jurisdiction'; they are absolutely immune even when their action is erroneous, malicious, or in excess of their judicial authority." *Van Sickle*, 791 F.2d at 1435.

---

[22] Courts construe judicial-immunity arguments as arising under Rule 12(b)(6) rather than Rule 12(b)(1). *See, e.g.*, *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009); *see also* Charles Alan Wright et al., 5B Federal Practice and Procedure § 1350 (3d ed. 2019) ("The defense of qualified or judicial immunity has also been held to be properly raised via Rule 12(b)(6) rather than Rule 12(b)(1), although one can find courts not being too particular about the distinction.").

The Parties' arguments focus on the first judicial-immunity exception: whether Judge Flynn's issuance of the Administrative Order was undertaken in the scope of his judicial function. *See* [Doc. 63 at 5]; [Doc. 71 at 5].   Judge Flynn argues that "[t]he issuance of a court order is quintessentially a judicial act within the exclusive purview of judges performing judicial functions." [Doc. 63 at 6].  According to Judge Flynn, the function of the Administrative Order "was to create a general process that governed all criminal defendants appearing in the judicial district." [*Id.* at 6].   Judge Flynn asserts that only a judicial officer could have issued the Administrative Order, and thus, he is entitled to judicial immunity.   [*Id.*].   In response, Ms. Reynolds argues that Judge Flynn's actions were not judicial in nature because (1) the Administrative Order did not arise out of an adjudication between parties; (2) an actor other than a judge, such as the state legislature, could have undertaken such an act; and (3) the Administrative Order was administrative in nature.  [Doc. 71 at 5-7].  The court addresses the Parties' arguments below.

***Materials Considered***.  Generally, in considering a Rule 12(b)(6) motion, "a federal court may only consider facts alleged within the complaint." *Cty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).  "But, in some instances, the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity." *Cahey v. Int'l Bus. Machines Corp.*, No. 20-cv-00781-NYW, 2020 WL 5203787, at *3 (D. Colo. Sept. 1, 2020).  In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  This allows the court to take judicial notice of "facts which are a matter of public

record." *Id.* "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.* (quotation and alteration marks omitted).

Both Parties rely on the Administrative Order in raising arguments as to whether judicial immunity applies here. *See* [Doc. 63 at 7; Doc. 71 at 7]. The Administrative Order is both referred to in Plaintiff's Amended Complaint, *see* [Doc. 95 at ¶ 29], and is central to Plaintiff's claims against Judge Flynn. *See* [*id.* at 83 ("Defendant Flynn's Administrative Order set in motion a chain of events that caused Ms. Reynolds to be detained in violation of her due process rights.")]. Thus, the court may consider the Administrative Order in ruling on the Flynn Motion to Dismiss.

In addition, in his Motion to Dismiss, Judge Flynn relies on the Chief Justice of the Colorado Supreme Court's Directive 95-01 ("Directive 95-01") in asserting his arguments. *See* [Doc. 63 at 7-9]; *see also* [Doc. 63-2 (Directive 95-01)]. Plaintiff also cites to and relies upon Directive 95-01 in her Response. *See* [Doc. 71 at 8-9]. Directive 95-01 is not attached to Plaintiff's Amended Complaint, *see* [Doc. 95]; *see also* [Doc. 44-2], and neither Judge Flynn nor Plaintiff argue that Directive 95-01 is central to Plaintiff's claims, see [Doc. 63; Doc. 71], but Judge Flynn argues that Directive 95-01 is subject to judicial notice as a matter of public record. [Doc. 63 at 7 n.2]. Because Directive 95-01 is a public record, the court will take judicial notice of the document and may consider it to show its contents, but will not consider it for the truth of its contents. *Tal*, 453 F.3d at 1265 n.24; *cf. Harvey E. Yates Co. v. Cimarex Energy Co.*, No. 12-857 JH/SMV, 2014 WL 11512599, at *2 (D.N.M. Mar. 5, 2014) (considering administrative orders and other administrative proceeding documents without converting Rule 12(b)(6) motion into motion for summary judgment); *ETP Rio Rancho Park, LLC v. Grisham*, No. CIV 21-0092 JB/KK, 2021 WL 4478383, at *2 n.1, n.3 (D.N.M. Sept. 30, 2021) (taking judicial notice of New Mexico State

Executive Orders and Public Health Orders without converting motion to motion for summary judgment).

**Whether Judge Flynn Issued the Administrative Order in his Judicial Capacity**.  "The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his [or her] judicial capacity."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985).  "[T]he paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court."  *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1132 (M.D. Tenn. 2020) (quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989)); *see also Forrester*, 484 U.S. at 227.  "Administrative decisions, however, have not been similarly regarded as judicial, even when performed by a judge."  *Foster v. Flynn*, No. 20-cv-02296-RM-SKC, 2021 WL 3144961, at *3 (D. Colo. June 18, 2021), *report and recommendation adopted*, 2021 WL 3141948 (D. Colo. July 26, 2021).  *See, e.g.*, *Forrester*, 484 U.S. at 229 (judge's decision to demote and discharge employee was made "in an administrative capacity and was not judicial or adjudicative in nature).   Indeed, "[o]utside of that core judicial function," of resolving disputes between parties, "the court must engage in a close analysis to determine whether the act of a judge . . . is sufficiently closely related to judging to warrant immunity."  *Gentry*, 496 F. Supp. 3d at 1132.

The Amended Complaint contains few specific allegations as to Judge Flynn and the Administrative Order.  Ms. Reynolds alleges that Judge Flynn issued the Administrative Order to "establish[] a uniform procedure for the 21st Judicial District on how to process out-of-county warrants."  [Doc. 95 at ¶ 29].  According to Plaintiff, the Administrative Order instructs judges to

not set or modify bond when a defendant appears on an out-of-county warrant.  [*Id.* at ¶¶ 29, 32].

The Administrative Order directs that "[n]o bond modification shall occur regarding [an] out-of-

county warrant," citing *People v. Garcia*, 746 P.2d 560 (Colo. 1987), for the proposition that "the

court has no authority to set bond in such cases."  [Doc. 63-1 at 1].

The court finds that the applicability of judicial immunity here is a close call.  While Judge

Flynn argues that "[t]he issuance of a court order is quintessentially a judicial act within the

exclusive purview of judges performing judicial functions," [Doc. 63 at 6], Judge Flynn did not

issue a court order in the traditional sense—i.e., in the context of a live action or controversy

between parties, within a discrete court case.  *See, e.g.*, *Park v. Bruce*, No. 2:20-cv-02150-SLD-

EIL, 2021 WL 1813180, at *3 (C.D. Ill. May 6, 2021), *aff'd*, No. 21-1723, 2021 WL 5544920 (7th

Cir. Aug. 26, 2021) ("[D]rafting and issuing orders are certainly acts that are judicial in nature.").

Instead, the Administrative Order was a general order applicable to all initial hearings for

defendants appearing in Mesa County on an out-of-county warrant.  *See* [Doc. 95 at ¶ 29]; [Doc.

63-1].  Thus, the court is not convinced that Ms. Reynolds "dealt with [Judge Flynn] in his judicial

capacity," *Stump*, 435 U.S. at 362; indeed, Ms. Reynolds never dealt with Judge Flynn directly;

rather, her bail hearing was before a different judge.  [Doc. 95 at ¶ 36].

The Sixth Circuit has instructed that "[a]ny time an action taken by a judge is not an

adjudication between parties, it is less likely that the act is a judicial one." *Morrison*, 877 F.2d at

466.  In *Morrison*, a chief judge argued that he was entitled to judicial immunity from a suit

challenging his moratorium on the issuance of writs of restitution.  *Id.* at 464.  He argued that his

issuance of the moratorium was judicial in nature because only a judge could issue such an order,

and while it did not adjudicate any controversy between parties, it nevertheless governed the

*process* of adjudications between parties.  *Id.* at 466.  The Sixth Circuit rejected this argument and

found that judicial immunity did not apply, noting that the moratorium was "a general order, not connected to any particular litigation," which precluded the opportunity for a party's direct appeal of the application of the moratorium and "ma[de] the absence of judicial liability far less reasonable." *Id.*

Courts have relied upon *Morrison*, and the rationales therein, in finding that general orders are both judicial in nature—and thus protected by judicial immunity—and administrative in nature—and consequently not protected. *See, e.g.*, *Schultz v. Alabama*, No. 5:17-cv-00270-MHH, 2018 WL 9786086, at *6 (N.D. Ala. Nov. 8, 2018) (in preliminary injunction context, finding that judicial immunity did not apply to challenge of a standing order because the "March 2018 Standing Order, like the order at issue in *Morrison*, is a general procedural order from which no direct appeal is available"); *cf. McCullough v. Finley*, 907 F.3d 1324, 1332 (11th Cir. 2018) (where the plaintiffs alleged that the defendant judges "collectively failed to provide meaningful hearings on indigency, alternatives to jailing, and adequate access to counsel," finding that the challenged acts were performed in the judges' judicial capacity and distinguishing *Morrison* because "the judges' alleged acts are connected to particular litigation because each jailee was sentenced for a failure to pay fines within the context of an individual case"); *De Luna v. Hidalgo Cty., Texas*, No. CV M-10-268, 2011 WL 13282104, at *3 (S.D. Tex. June 24, 2011) (distinguishing *Morrison* and finding that acts were performed in the judicial capacity where the acts "occurred in a courtroom setting, directly concerned the adjudication of individual cases before the court, and arose directly out of an appearance before the Judicial Defendants acting in their official capacities as Magistrates."); *cf. Daves v. Dallas Cty.*, --- F.4th ----, 2022 WL 72201, at *30 (5th Cir. Jan. 7, 2022) (Haynes, J., dissenting) (opining that county judges "were not engaged in judicial conduct" where they promulgated a bail schedule for the court because "they were merely directing other judges in a

manner divorced from any given case," and had instead engaged in "policy-setting conduct that is not undertaken in the County Judges' judicial capacity").

Courts within this Circuit have similarly found that general acts governing a court's procedures are not judicial in nature.  In *Parga v. Board of County Commissioners of County of Tulsa*, No. 18-cv-0298-CVE-JFJ, 2019 WL 1231675 (N.D. Okla. Mar. 15, 2019), the plaintiffs alleged that the defendant judge promulgated a bail schedule that was to be "used to determine the financial condition of release for almost all people arrested in Tulsa County," and had also "promulgate[d] the Local Criminal Rules, which specify the procedures by which bail is set and probable cause determined, the timing and conduct of arraignments, and the appointment of counsel."  *Id.* at *4.  The plaintiffs sought injunctive relief against the use of the bail schedule without determining whether any alternative measures were appropriate.  *Id.* at *6.  In determining whether judicial immunity barred the plaintiffs' claims, the court noted that, in promulgating the bail schedule and the local rules, the judge "does not deal with any parties," and therefore, "there is no expectation that any person is dealing with [the judge] in his judicial capacity when performing such acts."  *Id.* at *8.  The court found that the judge's "promulgation of the secured money-bail schedule, and his promulgation of certain Local Criminal Rules . . . are not considered functions normally performed by a judge" and concluded that judicial immunity did not bar the plaintiff's claims.  *Id.*

However, the Sixth Circuit has also concluded that judicial immunity may apply to protect judges against claims arising out of the issuance of a generally applicable order where the order interprets the law.  In *Coleman v. Governor of Michigan*, 413 F. App'x 866 (6th Cir. 2011) (unpublished), a judge issued an administrative order directing that "in accordance with MCL

600.2963(8)[23] prisoners shall not be allowed to file a new lawsuit until they have paid any outstanding fees and costs on previous lawsuits filed in the 30th Circuit Court." *Id.* at 871. In other words, it "interpret[ed] § 600.2963(8) and advise[d] arms of the judges, including their clerks, to execute their statutory interpretation." *Id.* at 873. In finding that judicial immunity protected the judge from liability for the issuance of the order, the Sixth Circuit determined that the district court had "correctly state[d]" that the administrative order "qualifie[d] as a judicial action." *Id*. While the court acknowledged that the administrative order had been issued outside of a live case or controversy, the Sixth Circuit nevertheless found that "[t]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Id.* (quoting *Forrester*, 484 U.S. at 227).

With the above-discussed precedent in mind, the court respectfully finds that the allegations in the Amended Complaint resemble the facts in *Coleman* more closely than *Morrison* and ultimately fail to demonstrate that, in interpreting *Garcia*, Judge Flynn was acting in an administrative—rather than judicial—capacity. While the Amended Complaint alleges that the Administrative Order was issued to "establish a uniform procedure for the 21st Judicial District on how to process out-of-county warrants," [Doc. 95 at ¶ 30], the court finds it significant that the portion of the Administrative Order challenged by Ms. Reynolds does not actually set forth any procedural or administrative parameters. *See* [Doc. 95 at ¶¶ 33-34, 81]; *see also* [Doc. 63-1 at 1, ¶ 2]. Rather, similar to *Coleman*, the relevant portion of the Administrative Order contained only Judge Flynn's interpretation of a Colorado Supreme Court case, namely, Judge Flynn's

---

[23] Relevant here, this statute provided that "[a] prisoner who ha[d] failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid." *Coleman*, 413 F. App'x at 869 (quoting MCL 600.2963(8)).

understanding that pursuant to *Garcia*, 746 P.2d 560, the Mesa County court had "no authority to set bond" where defendants appeared on out-of-county warrants. *See* [Doc. 63-1 at 1, ¶ 2]. Indeed, Ms. Reynolds acknowledges that this portion of the Administrative Order was "based on an erroneous *interpretation of Colorado law*." [Doc. 95 at ¶ 3 (emphasis added)]; *see also* [*id.* at ¶ 34 (alleging that Judge Flynn "relied on" *Garcia* in issuing the Administrative Order)].

Thus, not only is the challenged provision in contrast to the other portions of the Administrative Order, which focus upon procedures related to the appearance of detainees held on out-of-county warrants, *see* [Doc. 63-1 at 1, ¶¶ 1, 3], the legal determination challenged by Ms. Reynolds differs substantially from the above-referenced cases in which a judge's act was determined to be administrative in nature. *See, e.g.*, *Schultz*, 2018 WL 9786086, at *8 (challenge to a standing order setting procedures for defendants who could not post bond); *Daves*, 2022 WL 72201, at *30 (challenge to the setting bond of a schedule); *Parga*, 2019 WL 1231675, at *4 (challenge to the act of promulgating a bail schedule and procedures by which bail was set and probable cause was determined, timing for arraignments, and appointment of counsel). And the court finds it notable that, in *Morrison*, there was no suggestion that the moratorium on writs of restitution was based on a determination of law; rather, the moratorium was issued "in observance of the holiday season," which supports that the moratorium was administrative, rather than substantive, in nature. 877 F.3d at 464.

Moreover, the Amended Complaint alleges that, at the advisement hearing, the Mesa County judge "did not inform Ms. Reynolds of the existences or basis for Judge Flynn's Administrative Order" and "did not tell Ms. Reynolds that he was bound by Judge Flynn's Administrative Order." [Doc. 95 at ¶ 39]. While Plaintiff alleges that "[i]n declining to set bond, [the judge] was following" the Administrative Order, [*id.* at ¶ 43], the non-conclusory facts as

alleged do not demonstrate that the judge was operating pursuant to any directive from Judge Flynn at all, let alone a procedural one.  For instance, there are no allegations that Judge Henderson utilized the form "Order Re; Out-of-County Warrant" attached to the Administrative Order at all. *Compare* [Doc. 95 at ¶¶ 36-44].  At most, the judge relied upon Judge Flynn's *substantive* interpretation of *Garcia*.  *See* [*id.* at ¶¶ 39, 43]; *see also Coleman*, 413 F. App'x at 873 (interpretation of the law was within judge's judicial function).

"Interpreting the law is a normal judicial function," *Knezevich v. Ptomey*, 761 F. App'x 904, 907 (11th Cir. 2019) (unpublished), and "an act traditionally performed by judges does not cease to be judicial in nature simply because it is not performed within the context of a judicial proceeding." *Hall v. Bush*, No. 1:20-cv-731, 2021 WL 4239855, at *21 (W.D. Mich. July 21, 2021), *report and recommendation adopted*, 2021 WL 3750164 (W.D. Mich. Aug. 25, 2021); *cf. Martinez*, 771 F.2d at 434 (finding that a judge acted within his judicial capacity when he assigned a case to himself because, while it was an "administrative" act, it was "still a judicial function"). In light of the purpose of judicial immunity—to protect and promote the impartiality of the judiciary, *see Forrester,* 484 U.S. at 226-27—the court cannot conclude that Judge Flynn's interpretation of law, even if erroneous, [24] was outside of his judicial function.

Accordingly, I find that Judge Flynn is entitled to judicial immunity against Plaintiff's claims.  I respectfully **RECOMMEND** that the Flynn Motion to Dismiss [Doc. 63] be **GRANTED** and that Plaintiff's claims against Judge Flynn be **DISMISSED with prejudice**.[25]  *See Mehdipour*

---

[24] In so finding, this court does not pass on the substantive question of whether Judge Flynn's interpretation of *Garcia* was correct, but simply notes that Plaintiff alleges that the outstanding warrant for her arrest indicated "no bond pending first appearance in court." [Doc. 95 at ¶ 17].

[25] Because the court finds that Judge Flynn is entitled to judicial immunity, the court does not pass on Judge Flynn's alternative arguments.  Should the presiding judge decline to adopt the undersigned's recommendation with respect to judicial immunity, the court is prepared to issue a supplemental recommendation addressing the alternative arguments.

*v. Matthews*, 386 F. App'x 775, 778 (10th Cir. 2010) (unpublished) (affirming trial court's dismissal of claims with prejudice on the basis of judicial immunity); *Dorn v. Carpenter*, No. 20-cv-02103-RM-KLM, 2021 WL 3417978, at *3 (D. Colo. Aug. 5, 2021), *aff'd*, No. 21-1298, 2022 WL 175900 (10th Cir. Jan. 20, 2022) (dismissing with prejudice individual-capacity claims against judge where dismissal was based on judicial-immunity grounds).

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)     Defendant Matt Lewis' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) [Doc. 61] be **GRANTED IN PART** and **DENIED IN PART**;

(2)     Defendant Joe Pelle's Motion to Dismiss [Doc. 62] be **GRANTED IN PART** and **DENIED IN PART**;

(3)     Plaintiff's Claim Two be **DISMISSED without prejudice** as to Defendants Lewis and Pelle;

(4)     Defendant Flynn's Motion to Dismiss First Amended Complaint [Doc. 63] be **GRANTED**; and

(5)     Plaintiff's claims against Defendant Flynn be **DISMISSED with prejudice**.[26]

---

[26] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed

DATED:  January 27, 2022                    BY THE COURT:

                                            _____
                                            Nina Y. Wang
                                            United States Magistrate Judge

---

findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).